Eideh Manavi (SBN 188699)
Law Offices of Eideh Manavi
1801 Century Park East
Twenty-Fifth Floor
Los Angeles, California 90067
Telephone: (310) 490-8325
Facsimile: (310) 472-2326
Email: eideh@toubilaw.com

Attorneys for Plaintiff DR. MEHRDAD MAKHANI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| DR. MEHRDAD MAKHANI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a National Banking Association; EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation; and DOES 1 to 100, Inclusive,<br><br>Defendants. | Case No. 2:19-cv-9644 AB (MRWx)<br>Hon. Andre Birotte, Jr.<br>Ctrm. 7B<br><br>**FIRST AMENDED COMPLAINT** for:<br>1) Violations of Fair Credit Reporting Act; and<br>2) Violations of Fair Debt Collection Practices Act.<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:  September 16, 2019<br>Removal Date: November 8, 2019<br>Trial Date:  None Set |

Plaintiff Dr. Mehrdad Makhani hereby alleges and avers as follows:

## JURISDICTION AND VENUE

1.    This is an action arising under 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 56(a); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary civil penalties, a permanent injunction, restitution, disgorgement, and other equitable relief for Defendants' violations of the FCRA, the FDCPA, and

Section 5 of the FTC Act.

2.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 57b, 1681s, and 1692l.

3.    Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. §§ 1391(b)-(c), 1395(a), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.    Plaintiff DR. MEHRDAD MAKHANI (hereinafter "Plaintiff Makhani" or "Dr. Makhani") is, and at all times mentioned in this Compliant, was an individual residing in Los Angeles County, California.

## DEFENDANTS

5.    Defendant WELLS FARGO BANK, N.A (hereinafter "Defendant" or "the Bank") is, and at all times mentioned in this Complaint was a National Banking Association doing business in Los Angeles County, California.

6.    Defendant EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian") is an Ohio corporation registered to do business in California with principal offices in California located at 475 Anton Boulevard, Costa Mesa, California 92626.

7.    The true names and capacities of DOES 1 through 100, inclusive, and each of them, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs will

amend this Complaint when the true names and capacities of such Defendants have been ascertained.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by the conduct of each and all of such Defendants.

8.    Plaintiffs are informed and believe and based thereon allege that at all times herein mentioned, Defendants and each of them were the agents, employees and/or joint venturers of each and every other Defendant, and that in doing the things and acts herein alleged, each Defendant was acting within the course and scope of such agency, employment, and/or joint venture with the full knowledge, consent and acquiescence or subsequent ratification of each of the other Defendants. Venue is proper as the dispute involves real property located at 848 S Gretna Green Way, Los Angeles, California 90049.

## BACKGROUND AND COURSE OF CONDUCT

9.    Before 1998, Plaintiffs held various accounts with First Interstate Bank. In or about 1998, Wells Fargo Bank took over First Interstate Bank and all of Plaintiffs' accounts were transferred to Wells Fargo Bank. Plaintiff Makhani also held a safe deposit box as well as a mortgage secured by that certain real property commonly known as 848 S Gretna Green Way, Los Angeles, California 90049 (hereinafter "the Property"), and a home equity line of credit.

**FIRST AMENDED COMPLAINT**

## Safe Deposit Box Drilling

10.    On or about December of 2013, the Bank unilaterally drilled the safety deposit box of Plaintiff Makhani and transferred its contents to the state. Although the Bank had Plaintiff's true and correct and updated contact information, it sent notices to old addresses and did not notify Plaintiff of it's heinous actions herein.

## Unauthorized Accounts and Forged Signatures

11.    In or around 2012, the Bank opened two accounts in the names of both Plaintiffs, without the authorization of Plaintiffs, forging Plaintiff Makhani's signatures on the Account Applications for each of said accounts. Makhani became informed of the unauthorized accounts when he received statements from the Bank charging him fees therefor.

12.    The Wells Fargo account fraud scandal is an ongoing controversy brought about by the creation of millions of fraudulent savings and checking accounts on behalf of Wells Fargo clients without their consent. News of the fraud became widely known in late 2016 after various regulatory bodies, including the United States Consumer Financial Protection Bureau (CFPB), fined the company a combined US$185 million as a result of the illegal activity. The company has faced and faces additional civil and criminal suits reaching an estimated $2.7 billion by the end of 2018. (Source: Wikipedia).

13.    As part of the Bank's fraudulent scheme, the Bank created a false address for Plaintiff Makhani, an address on Washington Boulevard, which neither of

**FIRST AMENDED COMPLAINT**

Plaintiffs had an affiliation with, never had, and never used for any purpose whatsoever. The Bank used this address to purportedly give notice to Plaintiff Makhani, all the while knowing this was a false address and Plaintiff would not receive actual notice thereby.

**False Credit Reporting Delinquent and Foreclosure Proceedings Initiated**

14.   In or around 2017, with respect to the home equity line of credit, the Bank held timely payments made by Plaintiff Makhani beyond the grace period, so as to wrongfully charge Makhani with late payments. The Bank further wrongfully reported Makhani to the credit reporting bureaus, and reported the initiation of foreclosure proceedings when there were none, and he was current on his payments, causing his credit rating to plummet. This affected Makhani's ability to obtain car leases at favorable rates, refinance the existing loans on his real property holdings, and otherwise affected his credit worthiness, to his severe monetary detriment.

15.   Although the Bank admitted to wrongdoing and stated in a letter dated September 25, 2017, that "We have removed the delinquencies reporting for July 2017 and August 2017," the issue was not resolved.  A recent Experian credit report obtained by Makhani still displays the negative reporting from the Bank on his credit report, which erroneously reports that Makhani had a foreclosure initiated against him. A true and correct copy of portions of said credit report is attached hereto as Exhibit A and hereby incorporated by this reference as though fully set forth herein.

**FIRST AMENDED COMPLAINT**

16.    In July 2019, Makhani applied to refinance the existing 5.25% variable interest rate mortgage which he holds with the Bank. However, his application was denied due to a report of foreclosure by the Bank. When Makhani raised this issue again with the Bank, the Bank stated in an August 2, 2019 correspondence: "We found that previous requests to have the initiation of foreclosure and delinquencies on our customer's credit reporting removed was not completed due to the account being suppressed at the time of the account closure."

17.    The Bank therefore admitted to wrongdoing in it's failure to remove the false credit reporting. It was the Bank's responsibility to remove the false information from Makhani's credit, and it failed to do so, as it failed to un-suppress the account and then remove the false information. It was the Bank's duty to know that the account was suppressed and therefore the removal of false information would not occur until the Bank un-suppressed the account first. Despite admitting to it's errors, the Bank continues to fail to remove the false information from Plaintiff Makhani's credit report.

18.    Plaintiff Makhani continues to suffer from the effects of said falsely reported entries and false and unsubstantiated foreclosure reporting. Without the foreclosure reporting on Makhani's credit report, he will qualify for a new 30 year fixed rate loan at 3.5% interest, which translates to a nearly $5,000 per month savings in payments made.

**FIRST AMENDED COMPLAINT**

**Failure to Credit Amounts Paid**

19.    On or about 2018, Plaintiff Makhani borrowed money from a family member to pay off the credit line with the Bank.  Upon refinance of the line of credit, Makhani discovered that he was not credited a payment of $356.27 which he made. Further, Makhani paid $2,088.20 in December of 2018 for which he was never credited.

**Dispute Resolution Attempts Through Experian**

20.    In or around November 2018, Plaintiff Makhani filed a dispute with Experian with respect to the false "initiation of foreclosure" reporting by the Bank. On November 12, 2018, Experian sent Plaintiff Makhani correspondence confirming receipt of the dispute and stating that the dispute and documentation will be forwarded to the furnisher of the information, along with a description of the dispute, and a request that they investigate the dispute.

21.    The CRA alerted the furnisher of the credit information of the dispute, which triggers the furnisher's duty to investigate.

22.    No foreclosure was ever initiated against Plaintiff Makhani. No Notice of Default was ever recorded against his property. The "initiation of foreclosure" comment on his credit report is false information.

23.    On December 21, 2018, the Bank acknowledged it's error by stating "We found that we reported this account as though it had started foreclosure proceedings. On November 28, 2018, we updated the account and we have sent a

correction to the consumer reporting agencies to remove the incorrect information." The incorrect information still appears on Plaintiff Makhani's credit report. The Bank's statement that it "updated the account" was therefore false.

24.     In another letter dated January 14, 2019, the Bank stated "We found that special comment code stating the foreclosure was started on the account was added to your credit report in error. On November 28, 2018, we updated your credit report to remove the special comment code stating foreclosure was started on your account. The credit reporting for this account is currently suppressed until February 16, 2019, so the credit agencies may not reflect updated reporting for this account until the credit suppression expires."

25.     The credit suppression has long since expired, yet the erroneous information still appears on Plaintiff Makhani's credit report. Therefore, the Bank's statement that it had updated the credit report was again, false.

26.     The Bank has failed to take reasonable steps to investigate their error and to properly fix the error, as the error still appears on Plaintiff Makhani's most recent credit report pulled in December 2019:

27.     The Bank knew that the "initiation of foreclosure" and other negative information appearing on Plaintiff Makhani's credit report were false. They knew that the same false information prevented the Plaintiff from refinancing his loan with the Bank. Yet they failed to remove the negative, false and derogatory information from Plaintiff's credit report, and continue to fail to do so, despite several demands

made of them directly, and a dispute through Experian which they received.

**Damages Sustained**

28.    On or about October 17, 2018, Makhani was denied credit with Citibank because "A delinquent credit obligation(s), either paid or unpaid, was recorded on your credit bureau report."

29.    On or about December 27, 2018, Makhani's request for a credit line increase with his Chase business credit card account was denied because "You have a foreclosure or repossession or early lease termination."

30.    On or about December 31, 2018, Makhani's request for a credit line increase with American Express was not approved citing, among other things, "a serious delinquency on one or more of your accounts."

31.    On or about July 2, 2019, Makhani's application to refinance his Chase home loan was denied due to "Collection action or judgment" and "Foreclosure or repossession."

32.    It appears that the false reporting began in July 2018 and continues to the present.

33.    Makhani's current interest rate on his variable interest rate Chase home loan is over 5.0%. He applied for a loan with a fixed rate of 4.25% for the first five years. Said application was denied and he is now stuck with said variable interest rate note for the duration of the loan which is approximately 18 years. The difference in the rates currently is 0.75% although the difference may become more if the interest

**FIRST AMENDED COMPLAINT**

rates increase. Assuming the rates remain the same, Makhani will pay $109,026 in additional interest on his $1,610,000 unpaid principal balance. ($6730.07 x .075 = $504.75 additional monthly payment x 12 months x 18 years = $109,026.

34.     Plaintiff Makhani seek an injunction from this Court that the Bank take appropriate steps to repair any and all remaining false entries on Makhani's credit report including but not limited to the Foreclosure entry commencing July 2018 and demands compensation for his inability to obtain credit to refinance the variable interest rate loan with Chase and otherwise.

35.     Plaintiffs' Complaint demand is as follows:

(a)     $356.27 for payment not credited and discovered in escrow;

(b)     $2,088.20 for December 2018 payment not credited;

(c)     $109,026 in additional interest Makhani will pay due to inability to refinance;

(d)     $14,000 paid to loan broker;

(e)     Attorneys' fees;

(f)     Punitive damages; and

(g)     Damages due to lost credit, compensation for tortious conduct of the Bank.

36.     The actions of the Bank, as outlined herein, have been methodical, orchestrated and with the intent to ruin Makhani's credit and paralyze his financial status so that he cannot refinance his loan out with the Bank.

**FIRST AMENDED COMPLAINT**

37.    Prior to seeking judicial intervention herein, Plaintiffs attempted to resolve this matter with both Experian, a credit reporting agency, as well as directly with the Bank. However, despite months having gone by, the Bank never resolved the issue, repeatedly extended their "resolution date," changed contact persons, refused to return telephone calls, refused to provide information by telephone, contacted Plaintiff Makhani directly against his wishes for his attorney to handle the matter and despite instructions from his attorney otherwise, and otherwise frustrated Plaintiffs' efforts at meeting and conferring prior to litigation, thereby necessitating the filing of this action and the request for judicial intervention.

## THE FAIR CREDIT REPORTING ACT

38.    The FCRA was enacted in 1970 and became effective on April 25, 1971, and has been in force since that date. In 1996, the FCRA was amended extensively by Congress. Among other things, Congress added Section 623 of the Act, which became effective on October 1, 1997.

39.    Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

**FIRST AMENDED COMPLAINT**

## FIRST CAUSE OF ACTION

**For Violations of Fair Credit Reporting Act (15 U.S.C. §1681)**

**15 U.S.C. § 1681 e (b), 15 U.S.C. § 1681 i (a)(1) and 15 U.S.C. § 1681 s-2(b)(1)**

**(Against All Defendants)**

40.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 39, inclusive.

41.    A "consumer reporting agency" is defined by the FCRA as follows: [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

42.    Experian is a "consumer reporting agency" as defined by the FCRA.

43.    The Bank is a "furnisher" as that term is used in Section 1681s-2 of the FCRA.

44.    Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. See 15 U.S.C. § 1681n(a).

45.    Section 1681o of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed

under the Act.

<u>Experian's Failure To Adopt and/or Follow Reasonable Procedures</u>

46.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

47.     On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

48.     Despite actual and implied knowledge that Plaintiff was never in foreclosure, Experian readily sold such false reports to one or more third party, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

49.     On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

50.     Through Plaintiff's communications with Experian, Experian knows, or has sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is extremely inaccurate and damaging to Plaintiff. Nevertheless, Experian has taken no measures to stop painting a false and damaging picture about Plaintiff.

51.    Plaintiff remains unable to obtain mortgage refinancing because of the grossly inaccurate credit file maintained by Experian.

52.    Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, amounts paid to his mortgage broker to find financing.

53.    Plaintiff is not currently free to take advantage of various credit opportunities available to other consumers because of Experian's failure to report only accurate information about him.

54.    As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

55.    Upon information and belief, Experian has been sued on multiple occasions over the past ten (10) years for falsely reporting "initiation of foreclosure" despite being on notice that no foreclosure was ever initiated.

**FIRST AMENDED COMPLAINT**

56.    Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

57.    Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**Experian's Failure To Conduct Reasonable Reinvestigations**

58.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. Id.

59.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

60.    On multiple occasions in 2017, 2018 and 2019, Dr. Makhani has initiated disputes with Experian requesting that they correct and/or delete a specific

**FIRST AMENDED COMPLAINT**

item in his credit file that is patently inaccurate, misleading and highly damaging to him, namely, references to "initiation of foreclosure"

61.    Plaintiff specifically advised Experian on numerous occasions that a mistake had been made, provided all necessary information to Experian to support same, and requested the report be corrected accordingly, i.e., any references to "initiation of foreclosure" be deleted.

62.    Either Experian conducted no investigation of Dr. Makhani's disputes, or such "investigations" were so shoddy as to allow objectively false and highly damaging information to remain in Dr. Makhani's credit file.

63.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681i(a)(1) with respect to each dispute lodged by Plaintiff.

64.    As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

65.    As a direct and proximate result of Experian willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of

**FIRST AMENDED COMPLAINT**

actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

66.     Upon information and belief, Experian has been sued on multiple occasions over the past ten (10) years for refusing to correct its patently false reporting of an individual as "initiation of foreclosure," despite being on notice that there was no such initiation.

67.     Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

68.     Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**Wells Fargo Bank's Failure To Conduct Reasonable Reinvestigations**

69.     Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, to wit: After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a

person to a consumer reporting agency, the person shall:

    (A) conduct an investigation with respect to the disputed information;

    (B) review all relevant information provided by the consumer reporting agency

        pursuant to section 611(a)(2) [§ 1681i];

    (C) report the results of the investigation to the consumer reporting agency;

    (D) if the investigation finds that the information is incomplete or inaccurate,

        report those results to all other consumer reporting agencies to which the

        person furnished the information and that compile and maintain files on

        consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate

or incomplete or cannot be verified after any reinvestigation under paragraph

(1), for purposes of reporting to a consumer reporting agency only, as

appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information. See 15 U.S.C.

§ 1681s-2(b)(1).

    70.    On or around November 2018, Plaintiff contacted Experian to dispute

the accuracy of the information being reported about him.

    71.    Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), The

Bank received notification of this dispute from Experian.

**FIRST AMENDED COMPLAINT**

72.     By the time the Bank received this credit bureau dispute, the Bank had already been contacted on numerous occasions by Plaintiff, advising the Bank that its trade line on her Experian credit report was reflecting an "initiation of foreclosure" and that it was causing him problems with being approved for credit.

73.     The Bank failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681s-2(b)(1).

74.     Notwithstanding the Bank's actual knowledge that no foreclosure had ever been initiated against Plaintiff, the Bank's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

75.     In addition to the violation as described above, the Bank failed to satisfy its duty under Section 1681s-2(b) of updating incomplete or inaccurate information it had previously reported to CRAs upon receipt of each notice from Experian that Plaintiff disputed the accuracy of the previously reported information.

76.     The Bank's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Gorman v. Wolpoff & Abramson, LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009); See also *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

**FIRST AMENDED COMPLAINT**

77.    As a direct and proximate result of the Bank's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

78.    The Bank's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against the Bank, pursuant to 15 U.S.C. § 1681n(a)(2).

## FAIR DEBT COLLECTION PRACTICES ACT

79.    In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. § 1692l, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the FTC Act. The authority of the Commission in this regard includes the power to enforce the provisions of the

FDCPA in the same manner as if the violations of the FDCPA were violations of a Federal Trade Commission trade regulation rule. Finally, a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

## SECOND CAUSE OF ACTION

### For Violations of the Fair Debt Collections Practices Act

### (Against All Defendants)

80. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 39, inclusive.

81. In connection with the collection of a debt, Defendants, directly or indirectly, have used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to, the following:

a. In numerous instances, Defendants, directly or indirectly, have used false representations concerning the character, amount, or legal status of a debt, in violation of Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A); or

b. In numerous instances, Defendants, directly or indirectly, have failed to communicate to the CRA to which it reported a debt that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. § 1692e(8).

82. The acts and practices alleged in Paragraph 85 constitute violations of Section 807 of the FDCPA, 15 U.S.C. § 1692e. Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), the acts and practices alleged in Paragraph 37 also

constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

83.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Representations of material fact that are false or misleading constitute deceptive acts or practices prohibited by the FTC Act.

84.     In numerous instances, through the means described in Paragraphs 11-22, in the course of collecting debts from consumers, Defendants, directly and indirectly, have represented to consumers, expressly or by implication, that the debts were valid and that consumers had an obligation to pay the debts.

85.     In truth and in fact, in numerous instances the material representations set forth hereinabove were false or Defendants did not have a reasonable basis for the representations at the time the representations were made.

86.     Therefore, the representations set forth hereinabove were false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## INJUNCTION FOR VIOLATIONS OF THE FTC ACT, FCRA, AND FDCPA

87.     Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction to ensure that: (a) Defendant Experian will not continue to violate the FTC Act, the FCRA, and the FDCPA and (b) Defendant

Bank will not continue to violate the FTC Act and the FDCPA.

## EQUITABLE RELIEF FOR VIOLATIONS OF THE FCRA, FDCPA, AND FTC ACT

88.    Under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FCRA, the FDCPA, and the FTC Act, including the ability to order rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement to deprive a wrongdoer of ill-gotten gain.

## CIVIL PENALTIES FOR VIOLATIONS OF THE FCRA

89.    Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Court to award monetary civil penalties of not more than $2,500 per violation for each violation of Sections 623(a)(3) and 623(b) of the FCRA.

90.    Each instance in which Defendant Experian has violated Sections 623(a)(3) and 623(b) of the FCRA constitutes a separate violation of the FCRA for which Plaintiff seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. § 1681s.

91.    Defendant Experian has engaged in knowing violations of the FCRA as described above, which constitute a pattern or practice of violations.

## CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

92.    Defendant Experian has violated the FDCPA as described above, with actual knowledge or knowledge fairly implied on the basis of objective

circumstances, as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

93.    Each instance within five (5) years preceding the filing of this Complaint, in which Defendant Experian has failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

94.    Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), Section 814(a) of the FDCPA, 15 U.S.C. § 1692l, and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, authorize the Court to award monetary civil penalties of not more than $11,000 for each violation of the FDCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), 1692l, 1681s, and the Court's own equitable powers, respectfully requests that the Court:

1. Enter a permanent injunction to prevent future violations of the FTC Act, the FDCPA, and the FCRA by Defendants;

2. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the FDCPA, and the FCRA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten gains;

3. Award Plaintiff monetary civil penalties for each violation of the FCRA as alleged in this Complaint, except as to violations of Section 623(a)(1), 15 U.S.C. § 1681s-2(a)(1);

4. Award Plaintiff monetary civil penalties for each violation of the FDCPA occurring within five years preceding the filing of this Complaint; and

5. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:  December 5, 2019                    LAW OFFICES OF EIDEH MANAVI

By:_____
                    EIDEH MANAVI
Attorneys for Plaintiffs DR. MEHRDAD MAKHANI

**FIRST AMENDED COMPLAINT**

# DEMAND FOR JURY TRIAL

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

Plaintiffs  DR. MEHRDAD MAKHANI hereby demands trial by jury in this action.

Dated:  December 5, 2019                    LAW OFFICES OF EIDEH MANAVI


By:_____
        EIDEH MANAVI
        Attorneys for Plaintiffs DR.
        MEHRDAD MAKHANI

26

**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# Exhibit A

23
24
25
26
27
28

**FIRST AMENDED COMPLAINT**

MEHRDAD MAKHANI | Report # 0505-7855-59 for 11/20/19

**Date opened**
Feb 2006
**Type**
Home Equity
**Responsibility**
Individual

**First reported**
Nov 2011
**Terms**
Not reported
**Monthly payment**
$2,088
**Credit limit or original amount**
$347,680
**High balance**
$348,365

**Recent balance**
$0 as of Dec 2018
**Status**
Foreclosure proceedings started.
This account is scheduled to continue on record until Aug 2025.
This item was updated from our processing of your dispute in Nov 2018.
**Date of Status**
Dec 2018

**Payment history**

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | | | | | | ND | ND |
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | ND | | | | | | | ND | | | ND | ND |
| 2012 | | | | | | | | | ND | ND | | ND |

**Account History** * (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Sep18 | Aug18 | Jul18 | Apr18 | Mar18 | Feb18 | Jan18 | Dec17 | Nov17 |
|---|---|---|---|---|---|---|---|---|---|
| AB ($) | 336,761 | 336,958 | 339,822 | 340,647 | 340,635 | 341,462 | 341,812 | 342,325 | 342,100 |
| DPR | Aug31 | Aug01 | May07 | Mar07 | Mar07 | Jan04 | Dec06 | Nov07 | Nov07 |
| SPA ($) | 2,088 | 2,088 | 2,088 | 2,088 | 2,088 | 2,088 | 2,088 | 2,088 | 2,088 |
| AAP ($) | 2,088 | 4,176 | 2,088 | ND | 2,088 | 2,088 | 2,088 | ND | 2,088 |

*Between Nov 2017 and Sep 2018, your credit limit/high balance was $347,680*

**Your accounts in good standing** These items may stay on your credit report for as long as they are open.  Once an account is closed or paid off it may continue to appear on your report for up to ten years. Each of the items in this section has a positive payment history, meaning that no delinquencies or derogatory statuses are reported in the displayable payment history.

**Date opened**
Apr 1998
**Type**
Credit card

**Responsibility**
Individual
**First reported**
Jun 2011
**Terms**
Not reported

**Monthly payment**
$162
**Credit limit or original amount**
$10,000
**High balance**
$11,019

**Recent balance**
$6,045 as of Oct 2019
**Status**
Open/Never late.
**Date of Status**
Oct 2019

**Account History** * (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Sep19 | Aug19 | Jul19 | Jun19 | May19 | Apr19 | Mar19 | Feb19 | Jan19 | Dec18 | Nov18 | Oct18 | Sep18 | Aug18 | Jul18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AB ($) | 3,942 | 3,858 | 2,021 | 1,812 | 928 | 11,019 | 6,893 | 9,288 | 9,380 | 2,261 | 2,478 | 2,444 | 3,390 | 3,073 | 0 |
| DPR | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |
| SPA ($) | 122 | 75 | 46 | 35 | 35 | 278 | 213 | 207 | 215 | 56 | 58 | 65 | 73 | 35 | ND |
| AAP ($) | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |

| | Jun18 | May18 | Apr18 | Mar18 | Feb18 | Jan18 | Dec17 | Nov17 |
|---|---|---|---|---|---|---|---|---|
| AB ($) | 0 | 4 | 671 | 1,206 | 0 | 0 | 356 | |
| DPR | ND | ND | ND | ND | ND | ND | ND | ND |
| SPA ($) | ND | ND | ND | ND | ND | ND | ND | |
| AAP ($) | ND | ND | ND | ND | ND | ND | ND | |

*Between Nov 2017 and Sep 2019, your credit limit/high balance was $10,000*

**Date opened**
Jan 1998
**Type**
Credit card

**Responsibility**
Individual
**First reported**
Jun 2011
**Terms**
Not reported

**Monthly payment**
$50
**Credit limit or original amount**
$2,800
**High balance**
$2,835

**Recent balance**
$1,865 as of Oct 2019
**Status**
Open/Never late.
**Date of Status** .
Oct 2019

**Account History** * (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Sep19 | Aug19 | Jul19 | Jun19 | May19 | Apr19 | Mar19 | Feb19 | Jan19 | Dec18 | Nov18 | Oct18 | Sep18 | Aug18 | Jul18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AB ($) | 1,754 | 2,584 | 1,135 | 2,330 | 1,760 | 922 | 2,452 | 1,141 | 120 | 0 | 1,911 | 2,077 | 2,420 | 1,056 | 1,939 |
| DPR | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |
| SPA ($) | 42 | 59 | 35 | 53 | 35 | 35 | 56 | 35 | 35 | 49 | 49 | 57 | 54 | 35 | ND |
| AAP ($) | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |

| | Jun18 | May18 | Apr18 | Mar18 | Feb18 | Jan18 | Dec17 | Nov17 |
|---|---|---|---|---|---|---|---|---|
| AB ($) | 1,680 | 453 | 1,568 | 2,043 | 1,134 | 1,541 | 926 | 1,240 |
| DPR | ND | ND | ND | ND | ND | ND | ND | ND |
| SPA ($) | ND | ND | ND | ND | ND | ND | ND | |
| AAP ($) | ND | ND | ND | ND | ND | ND | ND | |

*Between Nov 2017 and Sep 2019, your credit limit/high balance was $2,800*

0154968053

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1801 Century Park East, 25th Floor, Los Angeles, California 90067. On December 5, 2019, I served the within documents:

**FIRST AMENDED COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

X    (By U.S. Mail) By placing a true copy thereof enclosed in a sealed envelope(s), with postage fully paid, for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

_____By (ELECTRONIC MAIL) I caused to be delivered such document via electronic means to the email address(es) or facsimile telephone number(s) indicated below:

| Mark D. Lonergan<br>Marquis Ian Wraight<br>SEVERSON & WERSON, APC<br>1 Embarcadero Ctr, 26th Floor<br>San Francisco, California 94111 | Elizabeth C. Farrell<br>SEVERSON & WERSON, APC<br>19100 Von Karmen Avenue, Ste 700<br>Irvine, California 92612 |
|---|---|

(By Personal Delivery) I personally delivered this document to the address(es) set forth below.

(By Overnight Carrier)I placed the above-entitled document(s) in an Overnight envelope/pouch, as addressed on the attached service list, with delivery fees paid or provided for and deposited in a facility regularly maintained by the express service carrier or delivered to a courier or driver authorized to receive documents on its behalf.

[X]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 5, 2019, at Los Angeles, California.

EIDEH MANAVI

**FIRST AMENDED COMPLAINT**